THE FIRST NATIONAL BANK OF DECORAH v. DAY BROTHERS
ET AL.

1. **Mechanic's Lien:** ASSIGNMENT OF CLAIM. Prior to the taking effect of chapter 44, laws of 1874, the assignment of a claim for which a mechanic's lien was held did not operate as a transfer of the lien.

2. ——: ——: CONTRACT. Where the defendants executed a draft upon a third person which they sold to the plaintiff, stating that they held a mechanic's lien for the indebtedness of the drawee to them, it was held that such facts would not constitute an implied contract for the assignment of the lien to the plaintiff.

3. **Contract:** SPECIFIC PERFORMANCE. A contract which is essentially one for the payment of money, and for a breach of which a party can be compensated in damages, will not be specifically enforced by a court of equity.

4. **Draft:** PROTEST: WAIVER OF NOTICE. Where after the maturity of a draft drawn by the defendants and sold by them to the plaintiff, the defendants stated that they had taken measures to enforce a mechanic's lien held by them upon property of the drawee to secure the indebtedness covered by the draft, it was held that such statement did not constitute a waiver of notice of the presentment and non-payment of the draft.

*Appeal from Winneshiek Circuit Court.*

SATURDAY, DECEMBER 13.

ACTION IN CHANCERY. Upon a trial on the merits in the court below there was a decree dismissing plaintiff's petition from which it prosecutes this appeal. The facts of the case appear in the opinion.

*M. P. Hathaway*, for appellant.

*Willett & Willett*, for appellee.

BECK, CH. J.—I. The petition alleges that defendants made their draft upon W. H. Valleau, payable at a future day to plaintiff, which was accepted by the drawer; that defendants represented and warranted, when the draft was made to and discounted by plaintiff, that they held a good and sufficient mechanic's lien upon an elevator and lots whereon it was sit-

uated, to secure the indebtedness of Valleau against which the draft was drawn, and that it carried the security of the lien and was an equitable assignment thereof; that plaintiff relying upon these representations purchased the draft; that defendants hold the mechanic's lien and are about to enforce the same and refuse to make any assignment thereof to plaintiff, and that plaintiff caused the draft to be duly protested and notice thereof to be given to defendants. The relief asked is a judgment against defendants for the amount of the draft, with costs of protest and interest, and that a decree be entered compelling defendants to assign the mechanic's lien to plaintiff as collateral security for the amount found due, and that defendants be enjoined from assigning, collecting, canceling or disposing of the lien to the prejudice of plaintiff's right.

The abstract fails to give the names of the defendants, other than Day Brothers. We understand that Valleau is not a defendant, at least no claim for relief is made against him.

The answer admits the making and acceptance of the draft and the allegations in regard to plaintiff's corporate capacity, but denies generally all other averments of the petition. It also pleads as a defense the discharge of liability of defendants by an instrument of writing executed by plaintiffs to Valleau. This count of the answer demands no further reference, as the matter pleaded therein will not be considered in this opinion.

We will proceed to determine whether, upon the pleadings and evidence, plaintiff is entitled to relief as against the defendants Day Brothers.

II. If the draft be regarded as an assignment, *pro tanto*, · of the debt held by Day Brothers against Valleau, it did not, as the law then stood carry with it the mechanic's lien in the absence of an express assignment of the lien itself. See *Scott v. Ward*, 4 G. Greene, 112; chapter 44, acts Fifteenth General Assembly. Plaintiff, therefore, as the assignee of defendant's claim against Valleau, did not hold a lien upon the elevator.

1. MECHANIC'S lien: assignment of claim.

III. It appears from the relief sought in the petition that plaintiff does not base its claim to the lien or right thereto

upon the assignment of the debt alone. It asks in the peti-
tion that defendants be compelled to assign the lien to them.
If the lien passed by the transfer of the debt, this relief would
not be necessary. It asks the relief either upon the ground
of the representations made by defendants to the effect that
they held the lien, or upon the ground that defendants entered
into an agreement to assign it.

It cannot, we think, be claimed that representations of the
kind indicated would bind defendants to transfer the lien.
The statement that defendant held a lien to secure the claim
without more, would neither create an assignment thereof nor
a contract to assign it. This conclusion requires no support
from authorities; simple statement demands assent.

IV.   We will next inquire whether a contract between the
parties exists, which equity will specifically enforce. We
are of the opinion, in the first place, that the evi-
dence fails to establish a contract for the assign-
ment of the lien. The cashier of plaintiff testifies as follows:
" About the time of the negotiation of the draft, John Day,
of Day Brothers, told me that they were furnishing lumber
for the Cresco elevator; that they would make a draft on Val-
leau for about $500, which would be secured by mechanic's
lien on the Cresco elevator. He asked if the bank would dis-
count the paper, and was informed that the bank would. He
said he could not make the draft until he got the bills of lum-
ber that they had furnished, and afterwards he came in, re-
peated the statement that the draft was secured by mechanic's
lien on the Cresco elevator, and drew the drafts. On the
strength of the representations the bank took the draft and
paid them the proceeds."

The president of plaintiff gives the following testimony
upon the same point: " I was also present when John Day
negotiated the draft in suit. He said it was for lumber fur-
nished Valleau for the Cresco elevator, and we would be
secured by a mechanic's lien upon the elevator, which he would
assign to us if necessary. After Valleau's failure I asked Mr.
Day if it was necessary for us to take any steps to protect our-
selves on the mechanic's lien. He said no, as they had more

liens and they would take the whole thing together and assign us our portion. He afterwards told me that they had taken the legal steps to enforce their lien, and that this draft was included. It was on the strength of this that we extended time, and also that we had the draft described as we did in the contract."

There is nothing in this testimony which authorizes us to find that a contract for the assignment was entered into by the parties. No other evidence bearing upon the point was offered by plaintiff. One of the defendants in his testimony substantially admits that he represented they had a right to a lien, and if necessary would take it, but he states that neither of the officers of plaintiff ever asked him to assign the lien to the bank. We conclude that plaintiff has failed to establish a contract for the assignment of the lien.

V. There are other difficulties in the way of granting relief to plaintiff by decreeing the performance of a contract to assign the lien. A contract relating to subjects of the character of the obligation sought to be enforced in this action, when the breach thereof may be compensated in damages, will not be specifically enforced in chancery. This is a familiar rule. Plaintiff may recover in an action at law full compensation for the loss it has sustained under the contract, if, indeed, a contract exists. A contract must be material, clearly expressed in its terms and established to the satisfaction of the chancellor, to authorize a decree for its specific performance. There is not a word of evidence tending to show that plaintiff agreed to accept the assignment and enforce the lien; the terms of the agreement are, surely, not definitely shown, and it certainly cannot be said that the testimony satisfactorily established the contract. We conclude that the case does not authorize the exercise of equity powers by decreeing a specific performance of a contract to assign the mechanic's lien.

*3. CONTRACT: specific performance.*

VI. We come now to the consideration of the claim for a personal judgment against defendants. There is not one word of testimony tending to show that the draft was at maturity presented for payment, which was re-

*4. DRAFT: protest: waiver of notice.*

fused and notice thereof given to defendants. The evidence, too, fails to show that the demand and notice of non-payment were waived. Plaintiff claims that defendants' declaration after the maturity of the paper, to the effect that they had taken steps to enforce their lien, which covered the draft, does tend to establish a waiver of demand and notice. The declaration is entirely consistent with the claim of defendants that they were discharged because notice of non-payment was not given. The lien would secure the indebtedness of Valleau upon the draft, though defendants were discharged from liability as drawers.

VII. Plaintiff insists that the allegation of the petition to the effect that the draft was protested for non-payment, is not denied in the answer. The position is not correct. A count of the answer denies generally all allegations of the petition not admitted. The allegation in question was not admitted. It is, therefore, denied.

The foregoing discussion disposes of all questions arising in the case.

AFFIRMED.